1

2                    UNITED STATES DISTRICT COURT

3                  EASTERN DISTRICT OF WASHINGTON

4   DARRYL C. HUTCHISON,          )
                                  )    No. CV-07-0197-JPH
5            Plaintiff,           )
                                  )    ORDER GRANTING DEFENDANT'S
6                v.               )    MOTION FOR SUMMARY JUDGMENT
                                  )
7   MICHAEL J. ASTRUE,            )
    Commissioner of Social        )
8   Security,                     )
                                  )
9            Defendant.           )
                                  )
10  ─────────────────────────────

11        BEFORE THE COURT are cross-motions for summary judgment,

12   noted for hearing without oral argument on January 7, 2008.  (Ct.

13   Rec. 18, 21).  Plaintiff Darryl C. Hutchison ("Plaintiff") filed a

14   reply brief on January 7, 2008.  (Ct. Rec. 23).  Attorney Maureen

15   Rosette represents Plaintiff; Special Assistant United States

16   Attorney David M. Blume represents the Commissioner of Social

17   Security ("Commissioner").  The parties have filed a consent to

18   proceed before a magistrate judge.  (Ct. Rec. 6).  After reviewing

19   the administrative record and the briefs filed by the parties, the

20   Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 21)

21   and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 18).

22                            **JURISDICTION**

23        On April 20, 2004, Plaintiff filed a second application for

24   Disability Insurance Benefits ("DIB"),[1] alleging disability since

25   August, 1989.  (AR 90-93).  Plaintiff's second application for DIB

26   ─────────────────────────────

27            [1]Plaintiff filed a prior application for DIB on April 30,
        2002, with disability alleged since January 1, 1987.
28      (AR 86-89).  Plaintiff's prior application for DIB was denied,
        and Plaintiff did not further pursue the application.  (AR 17).

ORDER GRANTING DEFENDANT'S MOTION . . . ~ 1

was denied initially and on reconsideration.  An administrative hearing was held before Administrative Law Judge ("ALJ") Richard Say on July 27, 2006.  (AR 1149-1182).  On September 14, 2006, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 17-24).  On May 24, 2007, the Appeals Council denied Plaintiff's request for review.  (AR 6-8).  Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed an action for judicial review pursuant to 42 U.S.C. § 405(g) on June 20, 2007.  (Ct. Rec. 1).

The ALJ's review of Plaintiff's earnings record revealed that Plaintiff earned sufficient quarters of coverage to remain insured for DIB purposes through March 30, 1992.  (AR 17, 1153). Therefore, in order to be eligible for DIB, Plaintiff had the burden to show that he was under a disability, as defined by the Social Security Act, prior to March 30, 1992, his date last insured.  The relevant time period under review is thus from August 1, 1989 (Plaintiff's alleged disability onset date), to March 30, 1992 (Plaintiff's date last insured).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcripts, the ALJ's decisions, the briefs of both Plaintiff and the Commissioner and will only be summarized here.  Plaintiff was 45 years old on his date last insured.  (AR 22).  Plaintiff completed a four-year college program and received his Bachelor's degree in 1994.  (AR 107).  He has past work experience as a mechanic.  (AR 102, 141-146).  He alleges disability as of August 1, 1989, due to post traumatic stress disorder, brain tumor,

injury to left ankle and degenerative arthritis in back and hips. (AR 101). However, Plaintiff's brain tumor was not diagnosed until December of 2001. (AR 1156). Plaintiff reported "[d]ue to back & leg pain I couldn't continue to work on concrete floors. Also PTSD had been affecting my ability to deal with supervisors & do my work." (AR 101). Plaintiff testified that left ankle and lower back problems, as well as a post traumatic stress disorder, kept him from working before March 1992. (AR 1166-1167, 1174).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he is engaged in substantial gainful activities. If he is, benefits are

ORDER GRANTING DEFENDANT'S MOTION . . . ~ 3

denied.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If he is not, the
decision maker proceeds to step two, which determines whether
Plaintiff has a medically severe impairment or combination of
impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).

If Plaintiff does not have a severe impairment or combination
of impairments, the disability claim is denied.  If the impairment
is severe, the evaluation proceeds to the third step, which
compares Plaintiff's impairment with a number of listed
impairments acknowledged by the Commissioner to be so severe as to
preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d),
416.920(d); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment
meets or equals one of the listed impairments, Plaintiff is
conclusively presumed to be disabled.  If the impairment is not
one conclusively presumed to be disabling, the evaluation proceeds
to the fourth step, which determines whether the impairment
prevents Plaintiff from performing work he has performed in the
past.  If Plaintiff is able to perform his previous work, he is
not disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If Plaintiff
cannot perform this work, the fifth and final step in the process
determines whether Plaintiff is able to perform other work in the
national economy in view of his residual functional capacity and
his age, education and past work experience.  20 C.F.R. §§
404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish
a *prima facie* case of entitlement to disability benefits.
*Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v.
Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is
met once Plaintiff establishes that a physical or mental

impairment prevents him from engaging in his previous occupation.
The burden then shifts to the Commissioner to show (1) that
Plaintiff can perform other substantial gainful activity and (2)
that a "significant number of jobs exist in the national economy"
which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498
(9th Cir. 1984).

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a
Commissioner's decision. 42 U.S.C. § 405(g). A court must uphold
the Commissioner's decision, made through an ALJ, when the
determination is not based on legal error and is supported by
substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995
(9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.
1999). "The [Commissioner's] determination that a plaintiff is
not disabled will be upheld if the findings of fact are supported
by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572
(9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence
is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d
1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.
*McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989);
*Desrosiers v. Secretary of Health and Human Services*, 846 F.2d
573, 576 (9th Cir. 1988). Substantial evidence "means such
evidence as a reasonable mind might accept as adequate to support
a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)
(citations omitted). "[S]uch inferences and conclusions as the
[Commissioner] may reasonably draw from the evidence" will also be
upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).
On review, the court considers the record as a whole, not just the

ORDER GRANTING DEFENDANT'S MOTION . . . ~ 5

evidence supporting the decision of the Commissioner. *Weetman v.*
*Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v.*
*Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to
resolve conflicts in evidence. *Richardson,* 402 U.S. at 400.  If
evidence supports more than one rational interpretation, the court
may not substitute its judgment for that of the Commissioner.
*Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579
(9th Cir. 1984).  Nevertheless, a decision supported by
substantial evidence will still be set aside if the proper legal
standards were not applied in weighing the evidence and making the
decision. *Brawner v. Secretary of Health and Human Services*, 839
F.2d 432, 433 (9th Cir. 1988).  Thus, if there is substantial
evidence to support the administrative findings, or if there is
conflicting evidence that will support a finding of either
disability or nondisability, the finding of the Commissioner is
conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir.
1987).

## ALJ'S FINDINGS

The ALJ found at step one that Plaintiff has not engaged in
substantial gainful activity during the period from his alleged
onset date through his date last insured.  (AR 19).  At step two,
the ALJ determined that, through the date last insured, Plaintiff
had the severe impairments of post traumatic stress disorder and a
left ankle injury.  (AR 20).  However, the ALJ concluded that
Plaintiff did not have an impairment or combination of impairments
listed in or medically equal to one of the Listings impairments.
(AR 21).  The ALJ found that, through Plaintiff's date last

insured, he had the residual functional capacity ("RFC") to perform at least sedentary level work activities with limitations on repetitive motion with his left foot, overhead activities and vibrations and, because of mental problems, was limited to short simple instructions and superficial contact with others.  (AR 22).

At step four of the sequential evaluation process, the ALJ determined that Plaintiff would have been unable to perform his past relevant work prior to March 1992.  (AR 22).  However, based on the testimony of the vocational expert and considering Plaintiff's age, educational background, work experience and RFC, the ALJ concluded that Plaintiff could perform a significant range of sedentary work that existed in significant numbers in the national economy prior to March 1992.  (AR 23-24).  Accordingly, the ALJ determined at step five of the sequential evaluation process that Plaintiff was not disabled within the meaning of the Social Security Act at any time from his alleged onset date through March 31, 1992, his date last insured.  (AR 24).

**ISSUES**

Plaintiff argues that he was more limited from a psychological standpoint than as determined by the ALJ.  (Ct. Rec. 19 at 11-17).  This Court must uphold the Commissioner's determination that Plaintiff is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

**DISCUSSION**

Plaintiff asserts that the ALJ failed to provide sufficient reasoning for rejecting the opinions of Drs. Pollack, Grismer, Riodica and Giffen regarding his psychological functioning.  (Ct.

Rec. 19 at 11-17).  The Commissioner responds that the ALJ
properly evaluated the medical evidence of record and properly
concluded that Plaintiff's psychological limitations restricted
him to only performing short, simple work instructions with only
superficial contacts with others.  (Ct. Rec. 22 at 7-15; AR 20-
22).

     With respect to Plaintiff's mental limitations, the ALJ found
that Plaintiff was limited to short simple instructions and
superficial contact with others.  (AR 22).  In making this
determination, the ALJ evaluated the medical evidence of record
pertaining to Plaintiff's mental ability.  The ALJ determined
that, while PTSD and depression were mentioned in the record
during the relevant time period, the evidence demonstrated that
the severity of Plaintiff's mental limitations produced only mild
limitations of activities of daily living, moderate limitations of
social functioning, mild limitations of concentration, persistence
or pace, and no episodes of decompensation of extended duration.
(AR 20-21).

     With respect to Plaintiff's mental limitations during the
relevant time period, August 1, 1989 to March 30, 1992, the ALJ
indicated as follows:

>    In 1989, the claimant was treated for "situational adjustment
>    reaction" and he was a recovering "drug addict and alcoholic"
>    [].
>
>    . . .
>
>    [W]hile treatment notes from Okanogan Valley Clinic mentioned
>    depression and post-traumatic stress disorder in 1989-1991.
>    The claimant was treated primarily for gastrointestinal
>    problems.  A note dated January 28, 1991 describes depression
>    and PTSD and says that the claimant was receiving Elavil for
>    the condition [].  In a follow-up for depression on March 20,
>    1991, the claimant increased the Elavil to 200 mg and he
>    reported doing significantly better.  He increased the dose

to 250 mg and reported nightmares and hallucinations.  Upon
reducing the dose to 200 mg again, he was doing fine and had
done some part-time mechanic work and exploring vocational
rehab.  The notes do not mention PTSD or depression again
until February 1992 when insomnia and a long history of PTSD
are merely mentioned with no discussion of ongoing treatment.

(AR 20).

Plaintiff was seen by William A. Gromko, M.D., in November
1989.  Dr. Gromko noted that Plaintiff was engaged in
psychological counseling, but did not want to take medications.
(AR 182).  Dr. Gromko prescribed Fluoxetine, and, in February
1990, Plaintiff requested an increase in his anti-depressant
medication.  (AR 182-184).  Plaintiff was seen almost monthly at
the Okanogan Valley Clinic for ongoing gastrointestinal problems
from November 1990 to September 1991.  (AR 211-239).  However,
despite the frequency of these visits, the medical reports make
only limited references to mental health complaints.  (*Id.*)

There is little evidence of Plaintiff's psychological
symptoms or limitations prior to the expiration of his insured
status.  However, the notes from Plaintiff's physicians indicate
that although he had difficulty with sleep, nightmares and feeling
down, the symptoms were sufficiently controlled by medication.
Impairments that can be controlled effectively with medication are
not disabling for the purpose of determining eligibility for
benefits.  *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001,
1006 (9th Cir. 2006), *see also, Odle v. Heckler*, 707 F.2d 439, 440
(9th Cir.1983)  (affirming a denial of benefits and noting that
the claimant's impairments were responsive to medication).

Plaintiff nevertheless contends that, as evidenced by the
medical reports of Drs. Pollack, Grismer, Riodica and Giffen, he
had greater psychological limitations during the relevant time

period.  (Ct. Rec. 19 at 11-17).  However, each of these medical
professionals evaluated Plaintiff after the expiration of the
relevant time period in this case.  Although evidence from outside
of the relevant period of time may be deemed useful information,
it is irrelevant to the extent that it does not address claimant's
medical status during the relevant period at issue in this action.

On February 12, 1993, Joseph F. Grismer, M.D., examined
Plaintiff.  (AR 1130-1133).  The report indicates that a February
26, 1990 examination determined that Plaintiff continued to have a
diagnosis of PTSD, characterized by recurrent recollections of the
events of Vietnam and recurrent nightmares and flashbacks when he
hears helicopter sounds.  (AR 1130).  The report also references
Plaintiff's past treatment for depressive symptomotology.  (AR
1130).  Although Dr. Grismer noted Plaintiff's difficulties with
social interactions and concentration at the time of his
examination, he indicated that Plaintiff was able to maintain his
college course work and interact with others in the classroom.
(AR 1131-1132).  Dr. Grismer diagnosed PTSD, delayed, and gave
Plaintiff a Global Assessment of Functioning ("GAF") score of 55.[2]
(AR 1132-1133).  While Dr. Grismer's report refers to a 1990
diagnosis of PTSD and past treatment for depressive
symptomotology, his report included no specific assessment of
Plaintiff's functional capacity prior to the date last insured.
Accordingly, the report fails to address Plaintiff's specific
///

---

[2]A GAF of 60-51 reflects: Moderate symptoms or moderate
difficulty in social, occupational, or school functioning.  *See*
Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994).

mental condition or limitations during the relevant period at issue.

On August 20, 1996, Romeo Reodica, M.D., examined Plaintiff. (AR 656-660). It was noted that Plaintiff had a 30% disability for service-connected PTSD and that, at the time of Dr. Reodica's evaluation, all information was provided by Plaintiff since "the C-file was not available and the clinical chart contained minimal information." (AR 656). Dr. Reodica diagnosed PTSD, delayed, and gave Plaintiff a GAF score of 45.[3] (AR 660).

Dr. Reodica's assessment, based entirely on information provided by Plaintiff in August of 1996, included no discussion or assessment of Plaintiff's capacity prior to the date last insured. In fact, Dr. Reodica noted that the evaluation was performed to "update information and symptoms from February 1993." (AR 656). Accordingly, the undersigned finds Dr. Reodica's findings irrelevant because he fails to address Plaintiff's medical status during the relevant period at issue.

Plaintiff was examined by David Griffon, M.D., on September 12, 2001. (AR 548-551). It was noted that Plaintiff had a 70% disability for service-connected PTSD and that Plaintiff had been diagnosed and treated for an inoperable brain tumor in 2000. (AR 548-549). Dr. Griffon diagnosed PTSD, chronic, and a cognitive disorder, not otherwise specified (mild aphasia and cognitive slowing associated with glioma and radiation therapy) and gave

---

[3]A GAF of 50-41 reflects: "[s]erious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS-IV 32 (4th ed. 1994).

Plaintiff a current GAF score of 25.[4]  Dr. Griffon's medical
report contained no discussion or assessment of Plaintiff's
capacity prior to the date last insured.  Therefore, his findings
are not relevant to Plaintiff's medical status during the period
of time at issue in this case as well.

On April 25, 2006, Plaintiff was examined by Dennis R.
Pollack, Ph.D.  (AR 1134-1143).  Dr. Bostwick noted that
Plaintiff's clinical scores indicated Plaintiff is depressed,
angry, resentful and dependent and suggest that he has difficulty
getting along with others and following social norms.  (AR 1139).
Dr. Bostwick stated "[i]t is clear from the record that Mr.
Hutchinson had emotional problems prior to 1991 that resulted in
an award for service related PTSD as a result of his service in
Vietnam.  These problems alone cause him to be disabled."  (AR
1139).  Dr. Bostwick diagnosed PTSD, a pain disorder associated
with both psychological factors and a general medical condition,
and a dysthymic disorder, ruled out dementia due to a brain tumor,
and gave Plaintiff a GAF score of 50.  (AR 1139).

On a mental medical source statement form, Dr. Pollack marked
that Plaintiff had only two marked limitation out of 20 areas of
functioning; that being his ability to perform activities within a
schedule, maintain regular attendance and be punctual within
customary tolerances and to complete a normal workday and workweek
without interruptions from psychologically based symptoms and to

---

[4]A GAF of 30-21 is characterized as: "Behavior is
considerably influenced by delusions or hallucinations or
serious impairment in communication or judgment or inability to
function in almost all areas."  DIAGNOSTIC AND STATISTICAL MANUAL OF
MENTAL DISORDERS 12 (3d ed. Rev. 1987).

perform at a consistent pace without an unreasonable number and
length of rest periods.  (AR 1141).  Dr. Pollack also marked that
Plaintiff had one moderate limitation, but otherwise found that
Plaintiff had no or mild limitations in all other areas of
functioning.  (AR 1140-1142).

The ALJ rejected Dr. Pollack's opinion that Plaintiff was
disabled prior to 1991 because his examination was remote in time
and based on a faulty analysis.  (AR 23).  Not only did Dr.
Pollack's evaluation occur 14 years after Plaintiff's date last
insured, but also, on the date last insured, Plaintiff had
received only a 40 percent disability rating from the VA.  This VA
disability rating does not indicate total disability as stated by
Dr. Pollack.  Moreover, Dr. Pollack did not state when Plaintiff's
psychological difficulties first caused him to be completely
disabled, nor described the level of the limitations stemming from
his impairments prior to Plaintiff's date last insured.  It is
further apparent from the record that Plaintiff's psychological
symptoms increased after he was diagnosed with a inoperable brain
tumor in 2000, making Dr. Pollack's 2006 retrospective opinion of
Plaintiff's 1991 abilities all the more speculative.  *See, Johnson
v. Shalala*, 60 F.3d 1428, 1432-1433 (9th Cir. 1995).  An ALJ must
give specific and legitimate reasons supported by substantial
evidence to reject the opinion of an examining physician.  *Bayliss
v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  The undersigned
finds that the ALJ provided sufficient rationale, supported by
substantial evidence, to reject Dr. Pollack's opinion that
Plaintiff was disabled prior to 1991.  (AR 23).
///

ORDER GRANTING DEFENDANT'S MOTION . . . ~ 13

With respect to Plaintiff's mental functioning, it is significant to note that the Department of Veterans Affairs ("VA") rated Plaintiff only 30% to 40% disabled for service connected PTSD during the relevant time period.  (AR 21, 656, 1131). Plaintiff's VA disability rating was not elevated to 70% until November of 1997 and was continued at that rate in September of 2001.  (AR 166-171).  The ALJ must consider the VA's findings in reaching his decision.  *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).  Because of the marked similarity between the two federal disability programs, the ALJ must give great weight to a VA determination of disability.  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).  As noted by the ALJ, the VA ratings indicate that the VA did not consider Plaintiff to be totally disabled even well after his date last insured.  (AR 21, 23).  The psychological limitations assessed by the ALJ during the relevant time period, restrictions to short, simple instructions and only superficial contact with others, accurately reflect the limitations assessed by the VA ratings as well as the weight of the record evidence.

The undersigned further finds it significant that Plaintiff reported working full-time as a motorcycle mechanic in 1989 and 1990, after the alleged onset date of disability, August of 1989. (AR 102, 110).

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities.  *Magallanes*, 881 F.2d at 751. If evidence supports more than one rational interpretation, the Court must uphold the decision of the ALJ.  *Allen*, 749 F.2d at 579.  It is the role of the trier of fact, not this Court, to

resolve conflicts in evidence. *Richardson*, 402 U.S. at 400.  The

Court may not substitute its own judgment for that of the ALJ even

if it might justifiably have reached a different result upon de

novo review.  42 U.S.C. § 405(g).  The ALJ's RFC finding is in

accord with the weight of the record evidence.  Contrary to

Plaintiff's argument, the record does not support a more

restrictive psychological finding than Plaintiff being limited to

short and simple instructions and superficial contact with others.

(AR 22).  Accordingly, the Commissioner did not err in so finding

in this case.

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, the

Court finds that the ALJ's decision is supported by substantial

evidence and free of legal error.  Plaintiff is thus not disabled

within the meaning of the Social Security Act.  Accordingly,

**IT IS ORDERED**:

1.  Plaintiff's Motion for Summary Judgment (**Ct. Rec. 18**)

is **DENIED**.

2.  Defendant's Motion for Summary Judgment (**Ct. Rec. 21**)

is **GRANTED**.

3.  The District Court Executive is directed to enter

judgment in favor of Defendant, file this Order, provide a copy to

counsel for Plaintiff and Defendant, and **CLOSE** this file**.**

**IT IS SO ORDERED.**

**DATED** this ___1st___ day of April, 2008.

                              *S/James P. Hutton*
                              JAMES P. HUTTON
                              UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION . . . ~ 15